IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 10-cv-02896-PAB

ERICA C. VALENZUELA,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

_____

**ORDER**
_____

This matter comes before the Court on plaintiff Erica C. Valenzuela's complaint [Docket No. 1], filed on November 29, 2010. Plaintiff seeks review of the final decision of defendant Michael J. Astrue (the "Commissioner") denying plaintiff's claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g), and the matter is ripe for disposition.[1]

**I. BACKGROUND**

Plaintiff applied for disability benefits on December 17, 2007, alleging a disability onset date of October 15, 2007. After an initial denial, an Administrative Law Judge

---

[1] Neither party requests oral argument, see Docket No. 10 at 3, ¶ 9, and the Court concludes that the appeal can be resolved based on the parties' filings.

("ALJ") held a hearing on September 17, 2009. The ALJ denied plaintiff's claim for disability in a decision dated November 2, 2009.

In her decision, the ALJ found that plaintiff had the "following severe impairments: bipolar disorder, and borderline personality disorder," R. at 18, but that these impairments, alone or in combination, did not meet one of the listed impairments in the regulations. See R. at 18. The ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to "perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant requires work that is simple and unskilled, with one-, or two- or three step instructions, not in close proximity to coworkers, and in minimal direct contact with the public." R. at 20. Based upon the testimony of a vocational expert ("VE"), and "[c]onsidering the claimant's age, education, work experience, and residual functional capacity," the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." R. at 23.

Plaintiff appealed the ALJ's decision to the Appeals Council of the Social Security Administration, which declined review, making the ALJ's decision the final decision of the Commissioner. See R. at 1.

## II. ANALYSIS

### A.  Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. See Angel

*v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B.  The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2).

Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only

> unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform

himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C. The ALJ's Decision

Plaintiff argues that the ALJ (1) "did not properly weigh the opinion of restrictions from the treating physician," (2) "assigned undue weight to the opinions of the non-examining physician," and (3) "does not account for all the mental limitations contained in the opinion which was given significant weight." Docket No. 11 at 4.

#### *1. Opinion of the Treating Physician*

Plaintiff received mental health treatment from a psychiatrist named David Scola, M.D. As plaintiff points out, Dr. Scola gave her a Global Assessment Functioning ("GAF")[2] score of 46 on January 23, 2008. *See* R. at 226. On July 11, 2008, Dr. Scola completed a Functional Capacity Evaluation (Mental) form, opining that plaintiff had either "moderate," "marked," or "extreme" limitations in all the categories of mental functional capacity. *See* R. at 213-14; *see also* R. at 22 (where the ALJ noted Dr. Scola's conclusion that the "claimant could not perform the following activities on a sustained basis: understand, remember and carry out simple instructions; make judgments that are commensurate with the functions of unskilled work, i.e., simple work-related decisions; respond appropriately to supervision, co-workers and usual work situations; and deal with changes in a routine work setting"). In support of those

---

[2]"The GAF scale is used by clinicians to report an 'individual's overall level of functioning.'" *Weigel v. Astrue,* 2011 WL 2193396, at *2 n. 3 (10th Cir. June 7, 2011) (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (Text Revision 4th ed. 2000) ("*DSM-IV-TR*")). A GAF score of 41-50 corresponds to "serious symptoms . . . OR any serious impairment in social, occupational, or school functioning." *DSM-IV-TR* at 34.

limitations, Dr. Scola noted that plaintiff experiences "severe mood swings with verbally aggressive behaviors" and "needs high doses of med[ication]s to control symptoms but at cost of sedation [and] mental slowness." R. at 214. Dr. Scola indicated that these limitations began sometime around September 2007. *See* R. at 214.[3]

The ALJ gave "limited weight" to Dr. Scola's opinions regarding the extent of plaintiff's limitations. R. at 22. Under the treating source rule, an ALJ must give a treating physician's opinion controlling weight where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2). If an ALJ decides not to assign controlling weight to the treating source's opinion, she must give "specific, legitimate reasons for h[er] decision." *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Ultimately, where an ALJ does not assign a treating source's opinion controlling weight, she must still determine its appropriate weight by looking to the factors which apply to all medical opinions and give good reasons for the weight she ultimately assigns. *See Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003). These factors include examining relationship, treatment relationship, supportability, consistency with the record as a whole, and specialization. *See* 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d).

The ALJ found that Dr. Scola's statement regarding "severe mood swings" did

---

[3] On January 12, 2009, Dr. Scola completed a form used in determining an individual's potential eligibility for the Colorado Aid to the Needy Disabled program. *See* R. at 251. Dr. Scola checked the box indicating that he believed plaintiff "has been or will be totally and permanently disabled to the extent they are unable to work at any job due to a physical or mental impairment." R. at 251 (emphasis omitted).

not account for his comments in treatment notes that plaintiff "achieved extended and continuing mood stability on her medications." R. at 22.[4] The ALJ also noted Dr. Scola's notations that plaintiff "was engaging in an intensified exercise regimen and was doing well with nutritional intake and calorie counting." R. at 22. Furthermore, the ALJ concluded that plaintiff's "many daily activities, which include household chores, managing money, driving and writing, demonstrate that she is less limited than the physician found her to be in the 'check block' form." R. at 22; *cf.* R. at 183 (where a consultative examiner noted plaintiff's January 30, 2008 claim "that her hobbies and interest[s] include dancing, yoga, karate, cleaning, doing laundry, working on homework with her daughter, and playing with her daughter" and plaintiff's claim that "as long as she is taking her medication she has no reason why she cannot do these things").

Finally, the ALJ noted that, "[i]mportantly, Dr. Scola failed to address the effect of drug addiction and alcoholism on the claimant's functional limitations, despite the claimant's history of substance abuse, including alcohol, marijuana, cocaine, acid and shrooms." R. at 22. The ALJ recognized that plaintiff testified that she had not used drugs and alcohol for about a year and a half, but noted her "history of downplaying the issue of drug use." R. at 22 ("For example, in September 2007, she reported that she did not see drug use as an issue, despite evidence that she had used alcohol and cocaine earlier that month.").

The Court finds that the foregoing discussion reveals that the ALJ appropriately

---

[4]Dr. Scola's treatment notes include reference to a medication combination that had afforded plaintiff "extended stability in recent months" as of March 13, 2009, R. at 255, and "continu[ed] mood stability" as of May 13, 2009. R. at 254.

weighed Dr. Scola's opinion. The ALJ cited adequate bases for concluding that Dr. Scola's opinion regarding the severity of the limitations as indicated on the July 11, 2008 form was not entitled to controlling weight, but rather should be "limited" due to inconsistencies with other record evidence, including Dr. Scola's own observations in treatment notes.

### 2. *Opinion of the Non-examining Physician*

The ALJ gave greater weight to the opinion of a non-examining physician, Ellen Ryan, M.D., than to that of Dr. Scola, according Dr. Ryan's opinion "significant weight." Dr. Ryan completed a Mental Residual Functional Capacity Assessment form on February 21, 2008. *See* R. at 205-08. Dr. Ryan noted that plaintiff has a long history of taking medication and reported that it helps. *See* R. at 207. She also noted that plaintiff reported that she was "capable of all daily activities as long as she takes her medication regularly." *Id.* Moreover, while plaintiff stated that she had been less social before, she had begun socializing on a daily basis. *See id.* Dr. Ryan opined that plaintiff's condition "may interfere with completion of a normal workday or week or may cause inconsistent pace." *Id.* She believed, "[h]owever, [that] when work does not require more than simple instructions, ordinary routines and simple work decision making, limitations of attendance and pace will not prevent the completion of a normal workday/workweek or significantly reduce pace." *Id.* Furthermore, Dr. Ryan stated that plaintiff "may not be able to work closely with supervisors or co-workers" and "should have minimal to no interaction with the general public," but "should be able to accept supervision and relate to co-workers if contact is not frequent or prolonged." *Id.* The

ALJ found that Dr. Ryan's opinion was "consistent with the evidence as whole," which reflected plaintiff's "ability to engage in a wide variety of daily activities" and included "medical evidence indicating that [plaintiff's] impairments have been responding well to conservative management."  R. at 23; *see* R. at 184-85 (where consultative examiner noted plaintiff's "report[] that her medications are helping her" and "that she has no problems concentrating as long as she is on her medication").

Plaintiff argues that the ALJ's conclusion that the non-examining physician's opinion outweighed the treating physician's opinion was erroneous, pointing out that the Social Security "regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."  Social Security Ruling 96-6p; *see* Docket No. 11 at 32 (citing *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987) ("[F]indings of a nontreating physician based upon limited contact and examination are of suspect reliability.")).

The ALJ, however, did not simply weigh Dr. Ryan's opinion against that of the treating physician.  The ALJ first addressed the report of a consultative examiner, Shirley Robbins, Psy.D., noting that Dr. Robbins "diagnosed the claimant with bipolar disorder and borderline personality disorder and opined that the claimant appeared to be competent to manage her own finances, as long as she was on her medication regimen."  R. at 22.  Dr. Robbins also assessed plaintiff as having a GAF score of 52, which "represents only moderate symptoms or moderate difficulties in social, occupational or school functioning."  *Id.* (citing *DSM-IV-TR*); *see* R. at 187.  Plaintiff reported to Dr. Robbins on January 30, 2008 that she "is not socializing any less now than before."  R. at 183.  "In fact[,] she claims that she did not want to socialize before

but is interested in doing so now" and "that whenever she sees her friends or neighbors they usually sit down and talk." R. at 183. Furthermore, Dr. Robbins noted that plaintiff reported that she "is physically capable of doing household chores, running errands, shopping, cooking, dressing herself and bathing herself," and "enjoys doing all of these things." *Id.* Plaintiff "report[ed] [no] reason why she cannot do these things and state[d] that she is very organized." *Id.* Plaintiff further reported a number of hobbies and interests and claimed that, so long as she takes her medication, there is no reason she cannot engage in all such activities. *See id*; *see also* R. at 184 ("She reports that her medications are helping her."); R. at 185 ("Ms. Valenzuela states that she has no problems concentrating as long as she is on her medication."). While plaintiff reported "a number of symptoms of mania," she reported "that she mostly experiences these symptoms when she is not on her medication." R. at 184.

The Court finds that the ALJ's reliance on Dr. Ryan's opinion to assess plaintiff's RFC must be upheld. Although plaintiff points out bases upon which an ALJ could reach a different conclusion, the Court's role is not to address the question de novo. *Cf. Ellison*, 929 F.2d at 536 ("We must evaluate the record to ascertain whether there is evidence to support the ALJ's decision, regardless of whether we would have reached a different result based on the record."). As the ALJ pointed out, the record, including the records of Drs. Scola, Robbins, and Ryan, as well as plaintiff's testimony, contains evidence that claimant was able "to engage in a wide variety of daily activities" and that her "impairments have been responding well to conservative management." R. at 23. The Court concludes that the evidence relied upon is such that "a reasonable mind might accept [it] as adequate to support" the RFC determination. *Flaherty*, 515 F.3d at

1070.

### 3. Inclusion of All Limitations

Plaintiff also argues that, despite the ALJ giving "significant weight" to Dr. Ryan's opinion, there are significant differences between that opinion and the RFC. Plaintiff points out that Dr. Ryan opined that plaintiff may not be capable of working closely with supervisors and co-workers and should have "minimal to no interaction with the general public." R. at 207. The RFC precludes plaintiff from working "in close proximity to coworkers" and concludes that she only have "minimal direct contact with the public." R. at 20. In presenting a hypothetical question to the VE based on Dr. Ryan's opinion, the ALJ limited plaintiff to work that was "[n]ot in close proximity to co-workers, meaning that the individual could not function as a member of a team," and to work which was "minimally in direct contact with the public." R. at 44. Plaintiff also points out that Dr. Ryan opined that plaintiff should be limited to work that "does not require more than simple instructions, ordinary routines and simple work decision making," R. at 207, but that the RFC restricted plaintiff to "work that is simple and unskilled, with one-, two- or three step instructions." R. at 20.

The Commissioner argues that the differences between Dr. Ryan's opinions and the RFC and/or the hypothetical posed to the VE find support in the record and are harmless, *see* Docket No. 12 at 15-16, citing *Atkinson v. Astrue*, No. 08-cv-01773-CMA, 2009 WL 1798147 (D. Colo. June 22, 2009). In *Atkinson*, the ALJ relied upon a medical opinion that plaintiff "should not 'work closely with supervisors or co-workers . . . .'" *Id.* at *8 (emphasis omitted). In one of the ALJ's hypotheticals to the VE, however, the limitation was presented as "occasional dealing with co-workers" and, in

11

the RFC, the limitation was "limited to occasional interaction with co-workers." *Id.*  The *Atkinson* court agreed with the Commissioner that "there is no reason to believe the word 'coworkers' cannot also refer to 'supervisors'" and concluded that plaintiff's "selective parsing of the record, in which he bases his appeal on the quality of the words chosen or the absence of what he deems a critical word, underscores the deferential standard of review." *Id.*  The Tenth Circuit affirmed the *Atkinson* decision, 389 F. App'x 804 (10th Cir. 2010), after noting that "the ALJ used both 'co-workers' and 'supervisors' when questioning the VE about the jobs the VE had identified in the national economy as being within the reach of a hypothetical claimant sharing Mr. Atkinson's RFC." *Id.* at 808 (emphasis omitted).  Therefore, omitting "supervisors" from the written decision was harmless because the ALJ relied upon VE testimony which considered limitations on interacting with "supervisors" as well as "co-workers."  *Id.*

Here, the Court cannot confidently conclude that the discrepancy between Dr. Ryan's opinion and the hypothetical presented to the VE was harmless.  *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (concluding that, with certain "caveats, it . . . may be appropriate [in Social Security appeals] to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way").  It is true that "[h]ypothetical questions to a vocational expert need only include those limitations that the ALJ finds are established by substantial evidence." *Sandoval v. Barnhart*, 209 F.

12

App'x 820, 825 (10th Cir. 2006) (citing *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995)). But, if the RFC was meant to be a modified version of Dr. Ryan's opinion, the ALJ should have articulated the basis for modifying the opinion. If, on the other hand, the ALJ sought to adopt Dr. Ryan's opinion in its entirety, *see* R. at 44 (where the ALJ stated that the hypothetical was based upon Dr. Ryan's opinion), then the ALJ should have communicated the limitations as described by Dr. Ryan "with precision." *Sitsler v. Astrue*, 410 F. App'x 112, 120 (10th Cir. 2011) ("a proper hypothetical question relating with precision all of the claimant's impairments is required in order for a VE's testimony to constitute substantial evidence to support the decision") (citing *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991)).[5] In this case, the ALJ did neither. Although the differences between Dr. Ryan's opinion, the RFC, and the hypothetical question appear small, determining whether the VE's testimony would have been the same had the ALJ included a limitation regarding supervisors in the hypothetical is speculative.[6] Therefore, although the Court has determined that an RFC relying upon Dr. Ryan's opinion is supported by substantial evidence, the ALJ must accurately present that opinion to the VE through a hypothetical question or explain why an RFC that modifies

---

[5] The Court concludes that the ALJ's recitation of Dr. Ryan's opinion did not constitute an accurate "summary." *Cf. Atkinson*, 2009 WL 1798147, at *9. Nor is there any explanation for why the opinion would require summarizing in any event. For example, Dr. Ryan opined that plaintiff have "minimal to no interaction with the general public," R. at 207, while the ALJ modified that opinion in the hypothetical to "minimally in direct contact with the public." R. at 44. Whether that is a material difference is not clear, but there is no obvious reason why Dr. Ryan's opinion, if adopted by the ALJ, required any modification in order to be reasonably presented "with precision" as part of a hypothetical question.

[6] The Court assumes that there may be jobs where one can avoid working with co-workers but must interact with a supervisor.

Dr. Ryan's opinion is supported by the record.

### III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner denying disability benefits to plaintiff is REVERSED and REMANDED for additional proceedings consistent with this opinion.

DATED February 27, 2012.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge